UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**GERTRUDE TUCK**,

    Plaintiff,

v.

**DISTRICT OF COLUMBIA**,

    Defendant.

Civil Action No. 24-cv-2609 (TSC)

**MEMORANDUM OPINION**

Gertrude Tuck, a seventy-one-year-old former employee of District of Columbia Public Schools ("DCPS"), filed this civil action against the District of Columbia, asserting claims for disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C § 621, and retaliation. Compl. at 4–6, ECF No. 1. Defendant moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 9. For the following reasons, the court will GRANT in part and DENY in part Defendant's motion.

### I. BACKGROUND

Plaintiff started as a DCPS substitute teacher in 2012. Compl. ¶¶ 12, 13. After working as a full-time teacher from 2017 to 2019, she became Registrar at DCPS Hendley Elementary School. *See id.* In early 2021, Plaintiff suffered an injury that "temporarily" prevented her from caring for herself or performing manual tasks. *Id.* ¶ 14. Plaintiff claims she remained "able to perform the essential functions of her job as Registrar with or without accommodation," but she requested leave pursuant to the Family and Medical Leave Act of 1993 ("FMLA") and the ADA due to her disability. *Id.* ¶¶ 14, 49. In March 2021, Defendant approved her FMLA leave. *Id.* ¶ 17. The

Complaint does not state how Defendant responded to her request for accommodation under the ADA. Plaintiff claims that shortly before she took leave "the Vice Principal and other administrative staff" made "repeated derogatory remarks and discussions about her age," including comments about her "'gray hair', 'dyeing' of her hair, and [] not dressing as an 'elderly woman.'" *Id.* ¶ 22.

Plaintiff notified DCPS via email that she was medically cleared to return to work on July 26, 2021. *Id.* ¶ 17. When she returned to Hendley on July 28, 2021, the Principal gave her "a letter dated June 4, 2021, notifying her of the elimination of her position effective June 25, 2021, purportedly as part of a reduction in force." *Id.* ¶ 18. Plaintiff had received no prior notice and was unaware her position had been terminated. *Id.* ¶ 19. She alleges that Defendant had already made budgetary adjustments and reduction in force decisions at Hendley shortly before her FMLA leave. *Id.* ¶ 20. Individuals impacted by that reduction in force received prompt notification and information about "job fairs and other opportunities to regain employment with [Defendant]." *Id.* ¶ 20. Plaintiff claims that, in contrast, Defendant eliminated her position without providing notice or an opportunity to regain employment with Defendant. *Id.* ¶¶ 29, 49.

On January 26, 2022, Plaintiff filed a Charge of Discrimination against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination under the ADA and ADEA. *Id.* ¶ 4; Def.'s Ex. 1 – EEOC Charge No. 570-2022-00305, ECF No. 9-1 ("Def.'s Ex. 1"). She filed this suit on September 10, 2024, asserting claims under the ADA, ADEA, and Title VII. Compl. ¶¶ 5–6. Defendant now moves to dismiss for failure to state a claim. Def.'s Mot. to Dismiss at 6, 8–9, ECF No. 9 ("MTD").

## II.   LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2022). To survive such a motion,

a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court must assume all "well-pleaded factual allegations" are accurate, *id.* at 679, and "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555).

## III.     ANALYSIS

### A. <u>Discrimination in violation of the ADA</u>

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability" regarding the "discharge . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a claim for employment discrimination under the ADA, a plaintiff must plead that she was disabled within the meaning of the ADA, that she could perform the essential functions of her position with or without reasonable accommodation, and that she suffered an adverse employment action because of her disability. *Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015); *cf. Stanley v. City of Sanford*, 606 U.S. ---, ---, 145 S. Ct. 2058, 2071 (2025) ("[T]o prevail under § 12112(a), a plaintiff must plead and prove that she held or desired a job, and could perform its essential functions with or without reasonable accommodation, at the time of an employer's alleged act of disability-based discrimination."). At the motion to dismiss stage, a plaintiff need only plausibly allege facts suggesting that each element has been satisfied. *Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 156 (D.D.C. 2014).

Defendant argues that Plaintiff fails to satisfy the last element because "she does not plausibly allege that she was terminated because of her disability." MTD at 5. But this assumes that Plaintiff's termination is the sole adverse employment action alleged. *Id.* at 5–6. Plaintiff's Complaint raises two interrelated adverse employment actions: (1) eliminating Plaintiff's position, and (2) failing to notify Plaintiff that her position was eliminated or to provide reemployment opportunities with Defendant. Compl. ¶ 29. As the Supreme Court recently explained in the Title VII context, adverse employment actions may include any "'disadvantageous' change in an employment term or condition." *Muldrow v. City of St. Louis*, 601 U.S. ---, ---, 144 S. Ct. 967, 974 (2024) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).[1] Termination certainly qualifies as an adverse employment action. *See, e.g.*, *Epps v. Potomac Elec. Power Co.*, 389 F. Supp. 3d 53, 67 (D.D.C. 2019). Accepting Plaintiff's allegations as true, Defendant's failure to timely notify Plaintiff that she had been terminated and provide opportunities for reemployment also suffice to state an adverse employment action because the court can reasonably infer those actions limited or delayed Plaintiff's employment prospects. *See Montgomery v. McDonough*, 682 F. Supp. 3d 1, 16 (D.D.C. 2023) (failure to provide performance appraisal that prevented an employee from receiving cash reward and delay caused by requiring employee to reapply for employment sufficiently alleged adverse actions).

To defeat Defendant's motion to dismiss, Plaintiff must "connect those adverse actions to her disability or allege that they were the result of discrimination." *Id.* At the motion to dismiss

---

[1] Courts in this district have applied *Muldrow* to ADA claims because "the relevant statutory language is 'virtually identical.'" *Alao v. District of Columbia*, No. 24-784 (TJK), 2025 WL 885202, at *6 (D.D.C. Mar. 21, 2025) (quoting *Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112 n.4 (1st Cir. 2024)); *Qashu v. Blinken*, No. 22-cv-1077 (TNM), 2024 WL 3521592, at *5–7 & n.6 (D.D.C. July 24, 2024); *cf. Mogenhan v. Napolitano*, 613 F.3d 1162, 1165 (D.C. Cir. 2010) (Title VII "contains anti-discrimination and anti-retaliation provisions that are indistinguishable from those of the ADA").

stage in an employment discrimination case, "the threshold for pleading facts in support of causation is relatively low." *Badwal v. Bd. of Trs. of Univ. of the D.C.*, 139 F. Supp. 3d 295, 311 (D.D.C. 2015). "[T]he complaint need only allege that the plaintiff was subject to disparate treatment because of his status as a member of a protected category." *Id.* (quoting *Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 191 (D.D.C. 2008)).

Plaintiff clears this low bar. She alleges that Defendant's reduction in force in March 2021 did not include her position. Compl. ¶ 21. After Plaintiff took disability leave, however, Defendant eliminated her position. *Id.* ¶¶ 15–18. An employer's decision to terminate an individual only after learning of their disability lays the foundation for an inference of discrimination. *See Badwal*, 139 F. Supp. 3d at 312 (allegation that plaintiff "was not terminated until he told his employer of his disability" supports causation). In addition to the temporal overlap between her disability leave and termination, Plaintiff alleges that personnel affected by the March 2021 reduction in force "were contacted to pick up their reduction in force letters from the office and notified of job fairs and other opportunities to regain employment with Defendant." Compl. ¶¶ 21, 29. Whereas in her case, Defendant failed to timely contact her or deliver the reduction in force letter; she received it nearly eight weeks later when she returned from leave. *Id.* ¶ 18. Plaintiff also alleges that she never received opportunities to be rehired. *Id.* ¶ 29. Even if Defendant legitimately eliminated her position, "Plaintiff has plausibly alleged that Defendant[] established a separate and more challenging [reemployment] process for her because of her disability status." *Epps*, 389 F. Supp. at 68. In sum, Plaintiff alleges that Defendant "deviated" from the procedures and treatment afforded to other employees in an earlier reduction in force, which "is sufficient to survive a motion to dismiss." *See Edwards v. Gray*, 7 F. Supp. 3d 111, 116 (D.D.C. 2013); *see also Lathram v. Snow*, 336 F.3d 1085, 1093 (D.C. Cir. 2003) ("[U]nexplained

inconsistency can justify an inference of discriminatory motive." (citations omitted)). The court will therefore deny Defendant's motion to dismiss Count I.

## B. **Discrimination in violation of ADEA**

The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to [ ] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). At the motion to dismiss stage, a plaintiff asserting an ADEA violation does not need to plead a *prima facie* case of discrimination. *See Hill v. Bd. of Trs. of the Univ. of the D.C.*, 146 F. Supp. 3d 178, 184 (D.D.C. 2015); *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011). Instead, a plaintiff need only allege "the two essential elements of a discrimination claim" under the ADEA, "that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's . . . age . . . ." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). Courts apply the same standards and body of case law to ADEA and Title VII claims. *See, e.g.*, *id.*; *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 376 (D.D.C. 2018) ("When analyzing a discrimination claim under the ADEA, courts apply the framework developed in the context of Title VII litigation.").

Plaintiff states that she is seventy-one years old, Compl. ¶ 12, placing her within the ADEA's protected class, 29 U.S.C. § 631. Her termination states an adverse employment action, Compl. ¶ 18; *see Hill*, 146 F. Supp. 3d at 185, but Defendant again argues that she fails to sufficiently allege that her termination was because of her age, MTD at 7.

As with the ADA, the ADEA causation "standard at the motion to dismiss stage is not high," and courts "rarely require more than an assertion that the plaintiff suffered an adverse action due to his age." *Badwal*, 139 F. Supp. 3d at 315; *see, e.g.*, *Hill*, 146 F. Supp. 3d at 184 ("[T]he factual detail required to survive a motion to dismiss can be quite limited."). Nevertheless, a plaintiff must "plead sufficient facts to show a plausible entitlement to relief," *Fennell v. AARP*,

770 F. Supp. 2d 118, 127 (D.D.C 2011), and "the Court cannot 'create something out of nothing,'" *Arnold v. Speer*, 251 F. Supp. 3d 269, 273 (D.D.C. 2017) (quoting *Jianqing Wu v. Special Counsel, Inc.*, 54 F. Supp. 3d 48, 56 (D.D.C. 2014)).

Although it is a close question, the court will not dismiss the claim at this early juncture. Plaintiff's causation allegations are minimal—she alleges that "the Vice Principal and other administrative staff at Hendley Elementary" made "repeated derogatory remarks and discussions about her age," including "comments, remarks or discussions about [Plaintiff's] 'gray hair', 'dyeing' of her hair, and [] not dressing as a 'elderly woman,'" but fails to identify the ages of individuals making the comments or their role in the reduction in force process. Compl. ¶ 22. Despite those deficiencies, "courts in this Circuit have consistently recognized the 'ease with which a plaintiff claiming employment discrimination can survive a . . . motion to dismiss.'" *Fennell*, 770 F. Supp. 2d at 127 (citation omitted). By alleging that she suffered "repeated derogatory remarks and discussions about her age" by a supervisor shortly before she was terminated and providing specific examples of the insulting language, Compl. ¶ 22, Plaintiff just clears the low pleading standard for ADEA claims. *See, e.g.*, *Washington v. D.C. Hous. Auth.*, 170 F. Supp. 3d 234, 241–42 (D.D.C. 2016) (Allegations that Plaintiff was qualified for his position, he was terminated during a RIF because of his age, and that a supervisor stated "too bad you didn't fit in" stated an ADEA claim); *Bowe-Connor v. Shinseki*, 845 F. Supp. 2d 77, 88–90 (D.D.C. 2012) (Allegations that Plaintiff "was called 'one of the 'GOLDEN GIRLS' while the supervisory staff did nothing to advert the behavior" and opportunity discrepancies between older and new employees stated an ADEA claim). The court will deny Defendant's motion to dismiss Count II, but Plaintiff will need more to survive summary judgment. *See, e.g.*, *Seed v. Regan*, 643 F. Supp. 3d 129, 137–78 (D.D.C. 2022) ("[R]emark[] that the agency hoped to fill the Branch

Chief positions with younger employees . . . does not constitute direct evidence or 'belie a discriminatory approach to employment decisions generally.'" (citation omitted)); *Bean v. District of Columbia*, 264 F. Supp. 3d 242, 252 (D.D.C. 2017) (Stray remarks "made by a non-decision maker, or a statement made by a decision maker that is unrelated to the relevant employment decision itself, does not constitute direct evidence" of discrimination. (citation omitted)).

## C. Retaliation

Plaintiff's retaliation claim references Title VII, the FMLA and the ADA. Compl. at 6 (Count III titled "Retaliation Based Upon Protected Activity" and citing 42 U.S.C. §§ 2000e-2(a)(1)); *id.* ¶ 49 (alleging "retaliation for her protected activity associated with [] requesting leave pursuant to the ADA and FLMA [sic]"). The same pleading standards apply to retaliation claims under those statutes. *Baloch*, 550 F.3d at 1198 (applying same standard to retaliation claims under Title VII, ADEA, and ADA); *Gordon v. U.S. Cap. Police*, 778 F.3d 158, 161 (D.C. Cir. 2015) (FMLA antiretaliation provision was "'derived' from" Title VII's antiretaliation provision and "is intended to be construed in the same manner" (citation omitted)). When a claim incorporates multiple employment discrimination statutes, courts may consider whether a plaintiff states a claim under any of the statutes and overlook technical pleading deficiencies. *See, e.g., Austin v. Am. Inst. for Rsch.*, 75 F. Supp. 3d 247, 255 n.10 (D.D.C. 2014) (considering retaliation claim under Title VII and ADA because claim is "subtitled 'Violation of Title VII . . .'" but "also references the ADA's protection against retaliation"); *Lurensky v. Wellinghoff*, 167 F. Supp. 3d 1, 15–16 (D.D.C. 2016) (considering retaliation claim was "presumably" asserted under Title VII, ADEA, and Rehabilitation Act); *Blackmon v. Garland*, No. 21-cv-0034, 2022 WL 4130815, at *7 n.7 (D.D.C. Sep. 12, 2022) (construing Title VII retaliation claim as an ADEA retaliation claim). Considering the similar pleading requirements and the preference for liberal construction at the

motion to dismiss stage, the court will address whether Plaintiff states a retaliation claim under Title VII, the ADA, or the FMLA.

To the extent Plaintiff intended to assert an FMLA retaliation claim, it is untimely. The FMLA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any individual" for taking FMLA leave. 29 U.S.C. § 2615(a)(1); *Waggel v. George Wash. Univ.*, 957 F.3d 1364, 1375 (D.C. Cir. 2020). Unlike ADA and Title VII claims, for which the time to sue depends on exhaustion of administrative remedies, *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526–27 (D.C. Cir. 2019), an FMLA action must be brought "not later than 2 years after the date of the last event constituting the alleged violation," 29 U.S.C. § 2617(c)(1), or not later than three years for a willful violation, *id.* § 2617(c)(2). *See Austin*, 75 F. Supp. 3d at 255–56. Plaintiff filed her Complaint on September 10, 2024. *See* Compl. at 1. Even applying the longer limitations period, any claims arising before September 10, 2021 are untimely. Plaintiff returned from FMLA leave and received notice of her termination on July 28, 2021. *Id.* ¶¶ 18–19. She alleges no subsequent retaliatory conduct, so assuming the three-year limitations period applies, the latest she could have filed her FMLA retaliation claim is July 28, 2024. *See Austin*, 75 F. Supp. 3d at 255–56 (dismissing FMLA retaliation claim as time barred). The court will therefore dismiss Plaintiff's retaliation claim under FMLA as time barred.

Defendant challenges Plaintiff's retaliation claim on two grounds: (1) failure to exhaust administrative remedies, and (2) failure to state a claim. MTD at 8–9. Title VII and the ADA both require that "a person complaining of a violation file an administrative charge with the EEOC" before filing suit. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Haynes*, 924 F.3d at 526; *Waggel*, 957 F.3d at 1375. "[A] plaintiff may only bring claims in district court that were actually part of the administrative charge," meaning "like or reasonably related to the allegations

of the charge and growing out of such allegations." *Haynes*, 924 F.3d at 526 (quoting *Park*, 71 F.3d at 907). In an employment discrimination case, the court takes judicial notice of a plaintiff's administrative complaint and the agency's final decision on that complaint. *Tyson v. Brennan*, 277 F. Supp. 3d 28, 34 (D.D.C. 2017) (citing *Vasser v. McDonald*, 228 F. Supp. 3d 1, 10 (D.D.C. 2016)).

Plaintiff's EEOC charge asserted disability and age discrimination. Def.'s Ex. 1. Because Plaintiff did not include retaliation, Defendant argues that she failed to exhaust her administrative remedies. MTD at 9–10. Although courts consider whether the EEOC charge expressly included a claim, that fact is not dispositive. *Moore v. Pritzker*, 204 F. Supp. 3d 82, 91 (D.D.C. 2016) ("A plaintiff's burden to state specific claims is not so strict that [he] is barred from bringing [] claims because they were not specifically enumerated as claims in her original retaliation complaint before the EEOC."). The proper inquiry is whether the claim "arise[s] from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Haynes*, 924 F.3d at 527 (quoting *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010)) (cleaned up). Here, the EEOC addressed Plaintiff's retaliation claim. Opp'n – Ex. 1 EEOC Charge No. 570-2022-00305 Determination, ECF No. 10-2 (finding "reasonable cause to believe that Respondent failed to notify Charging Party of the reduction in force and discharged her in retaliation for her protected activity associated with requesting leave"). The purpose of exhaustion is "to give the agency 'an opportunity to resolve the claim administratively before the employee files her complaint in district court.'" *Haynes*, 924 F.3d at 527 (citation omitted) (cleaned up). Since the EEOC investigated and issued a determination on Plaintiff's retaliation claim, it must have followed from her charge of discrimination. Therefore, Plaintiff sufficiently exhausted her administrative remedies.

Regarding Defendant's second ground for dismissal, to state a retaliation claim under Title VII or the ADA, "a plaintiff must plausibly allege that (1) she 'engaged in statutorily protected activity,' (2) she 'suffered a materially adverse action by [her] employer,' and (3) the two are causally connected." *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 539 (D.C. Cir. 2025) (quoting *Howard R.L. Cook & Tommy Shaw Found. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013)) (Title VII); *see Jones v. Wash. Metro. Area Transit Auth.*, 205 F.3d 428, 433 (D.C. Cir. 2000) (ADA).

Plaintiff contends that she engaged in statutorily protected activity by "requesting leave pursuant to the ADA and FLMA [sic]." Compl. ¶ 49. Title VII and the ADA do not protect the same activity. Title VII's antiretaliation provision prohibits an employer from retaliating against an individual because they "opposed any practice made an unlawful employment practice by [Title VII]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); *see Morris v. McCarthy*, 825 F.3d 658, 673 (D.C. Cir. 2016) (discussing scope of protected activity under Title VII). Requesting or taking leave under the FMLA or ADA does not constitute protected activity under Title VII. *See, e.g.*, *Salak v. Pruitt*, 277 F. Supp. 3d 11, 23 (D.D.C. 2017) (FMLA sick leave request does not constitute protected activity under Title VII); *Welzel v. Bernstein*, 436 F. Supp. 2d 110, 123–24 (D.D.C. 2006) (same); *Trawick v. Hantman*, 151 F. Supp. 2d 54, 63 (D.D.C. 2001) ("[P]laintiff's use of sick leave to obtain treatment for his disabilities . . . does not constitute statutorily protected activity within the meaning of the Congressional Accountability Act," which extends Title VII's protections to the federal legislative branch); *cf. Murphy v. District of Columbia*, 590 F. Supp. 3d 175, 193–95 (D.D.C. 2022) (evaluating participation in lawsuit as protected activity Title VII, but request for FMLA leave as protected activity under FMLA). Plaintiff does not allege that she

opposed any unlawful employment practice that discriminated on the basis of race, color, religion, sex, or national origin, or participated in any Title VII-related proceeding before she was fired. Although she filed an EEOC charge after she was fired, Compl. ¶¶ 4–7, which would qualify as protected activity, she does not allege any that Defendant took any subsequent adverse action against her. Consequently, because Plaintiff fails to allege that she engaged in protected activity under Title VII, the court will grant Defendant's motion to dismiss her retaliation claim under Title VII.

The ADA's antiretaliation provision largely mirrors the Title VII provision. *Compare* 42 U.S.C. § 12203(a), *with* 42 U.S.C. § 2000e-3(a). The statutes differ as to what is protected activity, however. *Id.*; *see, e.g.*, *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 89–91 (D.D.C. 2016) (dismissing Title VII retaliation claim but reaching "a different conclusion with respect to Plaintiff's retaliation claim under the ADA"). The ADA "requires employers to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Waggel*, 957 F.3d at 1371 (quoting 42 U.S.C. § 12112(b)(5)(A)). "[T]he act of requesting in good faith a reasonable accommodation is a protected activity" under the ADA. *Solomon v. Vilsack*, 763 F.3d 1, 15 (D.C. Cir. 2014). A request for leave may constitute a reasonable accommodation request. *See Congress v. District of Columbia*, 514 F. Supp. 3d 1, 17 (D.D.C. 2020) (Plaintiff engaged in protected activity under the Rehabilitation Act, ADA's federal equivalent, by "request[ing] accommodations for her disability in the form of leave to attend doctor's appointments"); *McIver v. Mattis*, 318 F. Supp. 3d 245, 252 (D.D.C. 2018) (Plaintiff's request for "light-duty" as disability accommodation qualified as protected activity for Rehabilitation Act retaliation claim); *McNair*, 216 F. Supp. 3d at 90 (Plaintiff's "request for an alternative or modified work schedule" constituted protective activity under the ADA."). By

alleging that she "request[ed] leave pursuant to the ADA," Plaintiff sufficiently alleges that she engaged in statutorily protected activity under the ADA. Compl. ¶ 49. Plaintiff also sufficiently alleges a causal connection between her protected activity and a materially adverse action—her termination. At the motion to dismiss stage, "an adverse employment action occurring within three to four months of the protected activity [i]s sufficient to allow an inference of causation." *Spence*, 109 F.4th at 540 (citation omitted). Here, Defendant terminated Plaintiff during her disability leave. Compl. ¶ 18. Accordingly, the court will deny Defendant's motion to dismiss Plaintiff's retaliation claim under the ADA.

## IV.   CONCLUSION

For the reasons stated above, the court will GRANT in part and DENY in part Defendant's motion to dismiss. The court will DENY Defendant's motion as to Plaintiff's discrimination claim under the ADA (Count I), discrimination under the ADEA (Count II), and retaliation claim under the ADA (Count III), but will GRANT Defendant's motion as to Plaintiff's retaliation claims under Title VII and the FMLA (Count III). An Order shall accompany this Opinion.

Date: July 30, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge